IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARK CARBAUGH,                          §
                    Plaintiff,          §
                                        §
v.                                      §        CIVIL ACTION NO. H-10-0670
                                        §
UNISOFT INTERNATIONAL, INC.,            §
                    Defendant.          §

### MEMORANDUM OPINION AND ORDER

Plaintiff, Mark Carbaugh, brings this action against defendant, Unisoft International, Inc. ("Unisoft"), for employment discrimination based on disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.051(1), and discrimination based on age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and the TCHRA, and for failure to pay overtime and for retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 213 and 215.[1]   Pending before the court is Defendant's Motion for Summary Judgment (Docket Entry No. 39).   For the reasons explained below, defendant's motion for summary judgment will be granted, and this action will be dismissed.

### I.  Undisputed Facts

Carbaugh began working for Unisoft (a/k/a Software Management Associates or SMA) in September 2003.   Carbaugh obtained this job

---

[1]Plaintiff's First Amended Complaint, Docket Entry No. 15, pp. 5-8.

after meeting Unisoft's president, Michael Taylor, while working on a project for a previous employer.  Taylor offered Carbaugh a job. Carbaugh volunteered to Taylor that he had Multiple Sclerosis (MS) before he was hired by Taylor.[2]  Carbaugh's job involved Unisoft's OpCon/xps product.  OpCon/xps is an electronic scheduling system that is used by customers to automate their offices, their production facilities, or other places of business.[3]  Carbaugh's job involved demonstrating Unisoft's OpCon/xps product to potential clients, going to clients' sites, consulting with clients to assess their needs and capabilities, installing and tailoring Unisoft's OpCon/xps software to suit the clients' needs, troubleshooting problems, training the clients, working with Unisoft's programmers and coders to provide them information they needed to produce software that suited the clients' needs, and then verifying that the software performed as needed.[4]  Carbaugh's immediate supervisor was Kevin Adams who lived in Austin, Texas, and supervised Carbaugh from afar.[5]

_____

[2]Plaintiff's Deposition, Volume 1, pp. 9, 19, and 24-26, Exhibit 1 to Declaration of Drew B. Tipton ("Tipton Declaration"), attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39.

[3]Id. at 27-34, 39-53.

[4]Id. at 26:24-27:11, 32:23-53:16.  See also Declaration of Mark Carbaugh ("Carbaugh Declaration"), attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition"), Docket Entry No. 43, pp. 7-9 ¶¶ 49-69, especially 68.

[5]Id. at 70:9-17.  See also Declaration of Kevin Adams ("Adams Declaration"), attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 2 ¶ 5.

Carbaugh stopped working for Unisoft on May 1, 2009.  At that time Carbaugh was 41 years old.[6]  The parties dispute how Carbaugh stopped working for Unisoft, i.e., whether he resigned or whether he was discharged, but do not dispute the events that immediately preceded his change in employment status.  Carbaugh had been asked to test the latest version of the OpCon/xps product, but Carbaugh told Adams that he was unable to perform the testing because he was working on another project.[7]  Subsequently, Adams learned that Carbaugh had been spending time reading industry-related e-mails and writing a commentary on one of them that he sent to Unisoft's production manager.  Adams then sent an e-mail to Carbaugh stating:

**Mark - please start the testing that Gordy requested.**[8]

Adams' e-mail upset Carbaugh.  Carbaugh started writing an e-mail in response and hit send before the e-mail was completed.[9]  The e-mail that Carbaugh sent to Adams stated:

Kevin,

I catch up on email every morning to find out what is going on in the industry.  The link in question was in my inbox and it certainly applied to the company.  So I can't imagine why you would not want me to inform Michael about this issue.

---

[6]Id. at 64-65.

[7]<u>Id.</u> at 108-09.

[8]Exhibit 7 to Adams Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 4.

[9]Plaintiff's Deposition, Volume 1, pp. 110-20, Exhibit 1 to Tipton Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39.

> You have a history of making snap decisions based on assumptions without all the information, you also have a very short fuse and make threats as noted in my status. I can't work for a manager with these traits and will be discussing it with Michael.  I have attached my status for the past two days that shows I have not had time to complete the Noridian project.  Since you are still my manager at the moment I will stop everything and start testing as you request.  Please inform Danny that you have me testing.
>
> I am going to take the rest of the day off as I need some time to deal with your . . .[10]

When he left the office, Carbaugh took many of his personal belongings with him.[11]  Carbaugh returned to work the next day.  At approximately 4:00 p.m. Adams and Rick Logue, Unisoft's Chief Financial Officer, informed Carbaugh that his resignation had been accepted.[12]  Carbaugh contends that he was discharged.

## II.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about

---

[10]Exhibit 6 and Exhibit 7, p. 1, to Adams Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39.

[11]Carbaugh Declaration, attached to Plaintiff's Opposition, Docket Entry No. 43, p. 6 ¶ 39.

[12]Plaintiff's Deposition, Volume 1, pp. 135-37, Exhibit 1 to Tipton Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39.  See also Adams Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 3 ¶ 10.

material facts are "genuine" if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).   The
Supreme Court has interpreted the plain language of Rule 56(c) to
mandate the entry of summary judgment "after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S.Ct.
2548, 2552 (1986).   A party moving for summary judgment "must
'demonstrate the absence of a genuine issue of material fact,' but
need not negate the elements of the nonmovant's case."   Little v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   If
the moving party meets this burden, Rule 56(c) requires the
nonmovant to go beyond the pleadings and show by affidavits,
depositions, answers to interrogatories, admissions on file, or
other admissible evidence that specific facts exist over which
there is a genuine issue for trial.   Id.   Factual controversies are
to be resolved in favor of the nonmovant, "but only when . . . both
parties have submitted evidence of contradictory facts."   Id.

### III.   Analysis

Unisoft argues that it is entitled to summary judgment because
Carbaugh is unable to present evidence establishing the essential

-5-

elements of his claims.[13]  Carbaugh argues that summary judgment is not warranted because "[t]his is a direct evidence case."[14]

## A.  Disability Discrimination Claims

Asserting that he suffers from MS, Carbaugh alleges that at all relevant times he had a disability as that term is defined by the ADA and the TCHRA, and that Unisoft violated the ADA and TCHRA by refusing to make a reasonable accommodation for his disability, and by discharging him on May 1, 2009, without reasonable justification.[15]  Unisoft argues that it is entitled to summary judgment on Carbaugh's disability-related claims because Carbaugh

> cannot establish (1) that he has a disability, (2) that he suffered an adverse employment action, (3) assuming he suffered an adverse employment action, that it was because of his disability, or (4) that he was replaced by or treated less favorably than a non-disabled employee.[16]

The law governing claims under the ADA and the TCHRA is identical. See Cortez v. Raytheon Co., 663 F.Supp.2d 514, 520-21 (N.D. Tex. 2009) (citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 n.2 (5th Cir. 1999)).  Therefore these claims may be considered together.

---

[13]Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 8.

[14]Plaintiff's Opposition, Docket Entry No. 43, p. 1.

[15]Plaintiff's First Amended Complaint, Docket Entry No. 15, p. 5.

[16]Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 8.

1.   <u>Applicable Law</u>

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees . . . and other terms, conditions, and privileges of employment.'" <u>Rodriquez v. ConAgra Grocery Products Co.</u>, 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)).  Plaintiff may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in <u>McDonnell Douglas v. Green</u>, 93 S.Ct. 1817 (1973).  <u>See Seaman v.</u> <u>CSPH, Inc.</u>, 179 F.3d 297, 300 (5th Cir. 1999).

2.   <u>Claim for Discriminatory Discharge</u>

Carbaugh argues that he

was terminated because of his disability.  The actions of [Unisoft] and comments of his supervisor derogatory to his MS provide direct evidence of discrimination against him.  Written documentation shows disciplinary actions taken against him because of his disability.  Carbaugh did not resign his employment, he was terminated and [Unisoft] offers no credible evidence that he resigned. [Unisoft's] actions in this case cast a suspicion of mendacity on their statements due to contradictory positions between sworn interrogatories and sworn statements.[17]

(a)  No Direct Evidence of Disability Discrimination

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."

---

[17]Plaintiff's Opposition, Docket Entry No. 43, p. 2.

West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 123 S.Ct. 2572 (2003)).  "In the context of [employment discrimination], direct evidence includes any statement or written document showing a discriminatory motive on its face." Portis v. National Bank of New Albany, Mississippi, 34 F.3d 325, 328 (5th Cir. 1994).  See also Rubinstein v. Administrators of Tulane Education Fund, 218 F.3d 392, 402 (5th Cir. 2000), cert. denied, 121 S.Ct. 1393 (2001) (finding that a dean's testimony that he denied a professor a pay raise because the professor filed a discrimination suit against the university "could be no more direct on the issue of retaliation").  "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other case where a plaintiff meets his burden." Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 40 (5th Cir. 1996) (citing Portis, 34 F.3d at 328 n.6).

> When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.

Brown v. East Mississippi Electric Power Assoc., 989 F.2d 858, 861 (5th Cir. 1993).

Asserting that his immediate supervisor, Adams, made a disparaging and discriminatory statement about his disability, and terminated his employment the day after he suffered an MS attack,

-8-

Carbaugh argues that Adams' statement and the proximity of his termination to an MS attack constitute direct evidence that Unisoft's termination of his employment was discriminatory.  In support of this argument, Carbaugh offers his own declaration that he suffers from

> relapsing remitting multiple sclerosis.  This means that
> symptoms can flare up at any time and go away for a
> period of time.  While I was working for [Unisoft] I
> would have relapses about four times a year that required
> a week off for a 5 day in-home Intravenous steroid
> treatments administered by a nurse.  During the week of
> the steroid treatments the steroids cause a spike in
> energy followed by severe fatigue when coming off the
> steroid.  During one of these treatments Kevin Adams
> asked me if I could come in after the third day.  I came
> in late on the fourth day after receiving that day's
> treatment with severe fatigue and called in sick on
> Friday and he made the comment "will this ever end?"[18]

Carbaugh also asserts that he was fired the day after he had an attack of MS.[19]  Carbaugh explains that "[o]n April 30, 2009, Adams criticized [him] in an unfair manner and the stress of the situation resulted in a flare up of [his] MS symptoms. . . The very next day, [Unisoft] terminated Carbaugh."[20]

Unisoft argues that the evidence on which Carbaugh relies is

> not direct evidence of disability discrimination because
> one would have to infer that an alleged [MS] attack that
> Adams did not witness and an alleged comment made by
> Adams from some unknown time and in response to some

---

[18]Carbaugh Declaration, Exhibit 1 to Plaintiff's Opposition, Docket Entry No. 43, p. 2 ¶ 6.

[19]Plaintiff's Opposition, Docket Entry No. 43, p. 9.

[20]Id. at 10 (citing Carbaugh Declaration, Exhibit 1, p. 5 ¶ 33.

unknown event were connected to [Carbaugh] losing his job.[21]

The Fifth Circuit has explained that workplace remarks may constitute evidence of discrimination if they are

> 1) . . . related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.

Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996). If the comments fail to meet these criteria, e.g., if they are vague and remote in time, or the speaker has no authority or influence over the employment decisions, they are merely stray remarks that are insufficient to establish discrimination. Id. See also Krystek v. University of Southern Mississippi, 164 F.3d 251, 256 (5th Cir. 1999). "In contrast, specific comments made over a lengthy period of time are sufficient." Brown, 82 F.3d at 655-56. Although the Fifth Circuit no longer uses the four-prong CSC Logic test when remarks are submitted as evidence of pretext in cases based on indirect, circumstantial evidence, the Fifth Circuit continues to use this four-prong test "when a remark is presented as direct evidence of discrimination." Laxton v. Gap, Inc., 333 F.3d 572, 583 (5th Cir. 2003) ("We continue to apply the CSC Logic test when a remark is presented as direct evidence of discrimination apart from the McDonnell Douglas framework.").

---

[21]Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 49, p. 6.

Accepting Carbaugh's argument that Adams asked "will this ever end" while Carbaugh was receiving treatment for MS, and that Adams terminated Carbaugh's employment the day after Carbaugh suffered an MS attack, the court is unable to conclude Carbaugh has produced direct evidence that his termination was motivated by disability discrimination.   While the "will this ever end" question was apparently related to Carbaugh's MS and was made by Adams, the decision-maker who allegedly terminated Carbaugh's employment, Carbaugh has not provided any evidence that Adams made this remark either proximate in time or in relation to Carbaugh's discharge. Accordingly, Adams' "will this ever end" question is not direct evidence that Carbaugh's termination was caused by animus for his disability.

Accepting Carbaugh's assertion that he suffered an MS attack on April 30, 2009, the day before Adams discharged him, the proximity of this MS attack to his termination is not direct evidence of discrimination because Carbaugh has failed to present any evidence that Adams knew Carbaugh suffered an MS attack on April 30, 2009.   The undisputed evidence is that Adams was in Austin on April 30, 2009, and that the incomplete e-mail that Carbaugh sent to Adams that day did not mention an MS attack. Instead, the e-mail merely stated, "I am going to take the rest of the day off as I need some time to deal with your . . ."[22]   Although

---

[22]Exhibit 6 to Adams Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39.

there is evidence in both Carbaugh's declaration and in Carbaugh's deposition that the next day, when Adams came to Houston from Austin, met with Carbaugh, and informed Carbaugh that his resignation had been accepted, Carbaugh responded by telling Adams that he had not resigned, there is no evidence that Carbaugh told Adams that he had suffered an MS attack the day before, or that the actions that prompted Adams to terminate his employment were caused by an MS attack.

Absent evidentiary connections between Adams' "will this ever end" question and Carbaugh's termination, or between Carbaugh's MS attack and Adams' decision to terminate Carbaugh's employment, a fact-finder would have to infer that animosity for Carbaugh's disability manifested itself in Adams' decision to discharge Carbaugh.  Because direct evidence of discrimination is evidence that does not require inferences to connect allegedly discriminatory conduct with a plaintiff's protected characteristics, neither Adams' "will this ever end" question, nor the MS attack that Carbaugh suffered the day before Adams terminated his employment constitute direct evidence that Carbaugh's termination was motivated by disability discrimination.

(b)  No Circumstantial Evidence of Disability Discrimination

To establish a prima facie case of intentional disability-based discrimination using the McDonnell Douglas framework plaintiff must show that (1) he is disabled, has a record of being

-12-

disabled, or is regarded as disabled as defined by the ADA; (2) he is qualified for the job; (3) the defendant made an adverse employment decision based on his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. See Gowesky v. Singing River Hospital Systems, 321 F.3d 503, 511 (5th Cir.), cert. denied, 125 S.Ct. 66 (2003). See also Seaman, 179 F.3d at 300. If the plaintiff makes a prima facie showing of disability-based discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Gowesky, 321 F.3d at 511. "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." Id. At the summary judgment stage, the non-movant need only point to the existence of a genuine issue of material fact. See Mason v. United Air Lines, Inc., 274 F.3d 314, 316 (5th Cir. 2001).

### (1)   Carbaugh Has Not Established a Prima Facie Case

Unisoft does not dispute that Carbaugh suffers from MS or that Carbaugh was qualified for his job. Instead, Unisoft argues that Carbaugh is unable to establish a prima facie case of disability discrimination because Carbaugh cannot produce evidence from which a reasonable fact-finder could conclude that his MS causes him to be disabled for purposes of the ADA, that he suffered an adverse employment action, or that he was treated less favorably than non-disabled employees.

              (i)    There is Evidence that Carbaugh is Disabled

Carbaugh's ADA claims for failure to accommodate and for wrongful discharge both require a showing that he is "disabled" within the meaning of the ADA. See Dupre v. Charter Behavioral Health Systems of Lafayette Inc., 242 F.3d 610, 613 (5th Cir. 2001). The ADA defines "disability" with respect to an individual as "**(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual; **(B)** a record of such an impairment; or **(C)** being regarded as having such an impairment." 42 U.S.C. § 12102(1). Whether an impairment is substantially limiting depends on its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact. Dupre, 242 F.3d at 614 (citing 29 C.F.R. § 1630, App., § 1630.2(j)). Whether an individual suffers from a disability is determined on a case-by-case basis based on evidence that shows the effect of the impairment on the individual's life. Albertson's, Inc. v. Kirkingburg, 119 S.Ct. 2162, 2169 (1999).

Unisoft argues that Carbaugh has failed to make the required showing that he suffers from substantial limitations in any major life activity. Unisoft explains that

> the only impairment Plaintiff asserts is MS. (Plaintiff's deposition (Vol. 1) at 9:22). Plaintiff testified that the primary symptoms he has as a result are fatigue and some cognitive problems when fatigued. (Plaintiff's deposition (Vol. 1) at 62:4-19). This is simply legally insufficient. For example, in *Berry v.*

-14-

*T-Mobile USA, Inc.*, 490 F.3d 1211 (10th Cir. 2007), the evidence at the summary judgment stage showed that the plaintiff had MS and "at the time of her discharge, Berry suffered from extreme fatigue which would cause cognitive difficulties, temporary postponement of activities and, on occasion, result in a fall." *Id.* at 1217.  The Tenth Circuit found that this was insufficient as a matter of law to establish that the plaintiff had a protected disability. *Id.* at 1218.

        <u>This Court</u> has held similarly in a recent case. *Webb v. Houston Cmty. College*, 2010 WL 1727051 at *8 (S.D. Tex. Apr. 27, 2010) (Lake, J.) (finding teacher with MS could not establish "threshold issue" because she had insufficient evidence of substantial limitations in any major life activity).  In fact, federal courts across the nation also agree that MS with similar symptoms is not a disability. *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 735-36 (8th Cir. 2010) (plaintiff with MS could not rely on her diagnosis alone and concluding that plaintiff failed to show she was substantially limited in any major life activities). . .[23]

Citing his own declaration and asserting that Unisoft's argument fails to take into account amendments to the ADA that took effect on January 1, 2009, Carbaugh argues that he has a disability that satisfies the first element of a <u>prima facie</u> case.[24]  In support of this argument Carbaugh declares:

        4.   I was diagnosed with multiple sclerosis in 1996 after having a seizure, optic neuritis and severe vertigo from an inflamed inner ear that lasted 3 weeks.  Multiple sclerosis has many symptoms.  The most common symptoms (and ones that I have at various times) are severe fatigue, muscles spasticity, unable to control balance, walking gait irregularity, short term memory deficiency, cognitive issues such as logic thinking, speech being slurred, long pauses when giving answers and asking questions because I am unable to get words out and

_____

[23]Defendant's Motion for Summary Judgment, Docket Entry No. 39, pp. 9-10.

[24]Plaintiff's Opposition, Docket Entry No. 43, p. 9.

-15-

articulate what I want to say.  Other symptoms that I
also experience are optic neuritis behind the eye,
dizziness, random pain that feels like electricity
shooting down a limb.

5.    My symptoms manifest themselves for various reasons.
The symptoms can be brought on by stress, lack of sleep,
getting overheated or too cold, over exerting myself, the
common cold, sinus infections or any type of illness.  MS
affects my entire neurological system.

6.    I have relapsing remitting multiple sclerosis.  This
means that symptoms can flare up at any time and go away
for a period of time.  While I was working for [Unisoft]
I would have relapses about four times a year that
required a week off for a 5 day in-home Intravenous
steroid treatments administered by a nurse.  During the
week of the steroid treatments the steroids cause a spike
in energy followed by severe fatigue when coming off the
steroid.[25]

In 2002 the United States Supreme Court held that an
impairment rises to the level of a disability only if its impact is
"permanent or long term."  Toyota Motor Mfg., Ky., Inc. v.
Williams, 122 S.Ct. 681, 691 (2002).  Accordingly, under Fifth
Circuit precedent temporary, non-chronic impairments have generally
not been held to constitute disabilities.  See, e.g., Pryor v.
Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998) (quoting 29 C.F.R.
§ 1630, App., § 1630.2(j), for its statement that "[t]emporary,
non-chronic impairments of short duration, with little or no longer
term or permanent impact, are usually not disabilities").  However,
following the Supreme Court's Toyota Motor decision, Congress
passed the ADA Amendments Act of 2008 ("ADAAA"), which became

_____

[25]Carbaugh Declaration, Exhibit 1 to Plaintiff's Opposition,
Docket Entry No. 43, pp. 1-2 ¶¶ 4-6.

effective on January 1, 2009.  Pub. L. No. 110–325, § 8, 122 Stat. 3553, 3559 (2008).  In the ADAAA Congress rejected the restrictive approach established in Toyota Motor for analyzing whether a plaintiff suffers from a disability for purposes of the ADA.  Id. at § 2(b)(5), 122 Stat. at 3554.  Although the ADAAA left the ADA's three-category definition of "disability" intact, significant changes were made regarding how these categories are to be interpreted.  For example, with respect to the definition of actual disability found in 42 U.S.C. § 12102(1)(A), the ADAAA expanded the list of "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  In addition, Congress mandated that the term "substantially limits" found in 42 U.S.C. § 12102(1)(A), "shall be interpreted consistently with the findings and purposes of the [ADAAA]."  42 U.S.C. § 12102(4)(B).  Congress also mandated that "[t]he definition of disability" be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).

Since the termination alleged in this case occurred in April and May of 2009, the ADAAA applies to Carbaugh's termination claim. Nevertheless, all of the cases cited by Unisoft in support of its argument that Carbaugh is not disabled within the meaning of the ADA, including those cases decided after the ADAAA's effective

date, involved conduct alleged to have occurred before the ADAAA went into effect.[26]  Because the ADAAA has been found not to apply retroactively to pre-amendment conduct,[27] pre-ADAAA case law was applied in the cases on which Unisoft relies.  Thus, the cases cited by Unisoft carry no precedential weight with respect to the issue of whether Carbaugh is disabled under the ADAAA.

The ADAAA expressly provides that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D).  Thus, the Fifth Circuit has stated that the ADAAA "make[s] it easier for a plaintiff with an episodic condition like [Carbaugh's] to establish that he is an 'individual with a disability.'"  Carmona v. Southwest Airlines Co., 604 F.3d 848, 855 (5th Cir. 2010).  Carbaugh's evidence that his MS, when active, substantially limits one or more of his major life activities is sufficient evidence to raise a genuine issue of material fact as to whether he was disabled under the ADAAA.  See Cutrera v. Board of Supervisors

---

[26]Defendant's Motion for Summary Judgment, Docket Entry No. 39, pp. 9-10 (citing, e.g., Webb v. Houston Community College, 2010 WL 1727051 at *8 (S.D. Tex. April 27, 2010), and Nyrop v. Independent School District No. 11, 616 F.3d 728, 735-36 (8th Cir. 2010)).

[27]See, E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, n.8 (citing Rivers v. Roadway Express, Inc., 114 S.Ct. 1510, 1519 (1994) ("Even when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear.")).

of Louisiana State University, 429 F.3d 108, 112 (5th Cir. 2005) (recognizing that a plaintiff's own description of the symptoms he suffers is sufficient to raise a genuine issue of material fact for trial as to whether he is disabled within the meaning of the ADA). See also Feldman v. Law Enforcement Associates Corp., 779 F.Supp.2d 472, 483-84 (E.D.N.C. 2011) (holding that employee who suffered from episodic flare ups of MS had plausible claim of disability under the ADA as amended because when active, the MS substantially limited the employee's normal neurological functions, which is a major life activity under the ADAAA).

> (ii)   There is Evidence that Carbaugh Suffered
>         an Adverse Employment Action

Carbaugh has also produced enough evidence to raise a genuine issue of material fact for trial as to whether he suffered an adverse employment action.   Carbaugh alleges that Unisoft discharged him on May 1, 2009, the day after he left work in the middle of the day because an e-mail from Adams triggered an MS attack.   Unisoft argues that Carbaugh resigned, but admits that when the next day Carbaugh had a change of heart, Unisoft refused to reinstate Carbaugh.   Either way, Carbaugh lost his job and job loss is an actionable adverse employment action.   Thus, the court concludes that sufficient evidence exists to raise a genuine issue of material fact as to whether Carbaugh suffered an adverse employment action.

                (iii)  There  is  No  Evidence  that  Carbaugh  Was
                       Replaced  by  or  Treated  Less  Favorably
                       Than  Non-Disabled  Employees

Citing Adams' testimony that Carbaugh was not replaced but, instead, that Carbaugh's responsibilities were absorbed by other employees, Unisoft argues that Carbaugh is unable to establish the element of a _prima facie_ case that requires him to show that he was replaced or treated less favorably than non-disabled employees.[28] Citing _Meinecke v. H&R Block of Houston_, 66 F.3d 77, 83 (5th Cir. 1995), Carbaugh argues that this element of his _prima facie_ case is easily met because Unisoft admits that it still required the duties Carbaugh performed to be performed, and that it passed those duties around to individuals who are not in Carbaugh's protected class because they do not suffer from MS.[29]  Carbaugh asserts that

> [t]his is not a reduction in force case.  This is a case of disparate treatment.  [Unisoft] does not get a free pass to discriminate solely because it did not replace Carbaugh.  The cases cited by [Unisoft] in support of this proposition are distinguishable as reduction in force cases.[30]

In order to establish the fourth element of his _prima facie_ case, Carbaugh must show that he was replaced by someone who is not disabled, or that he was treated less favorably than other non-disabled employees.  See _Gowesky_, 321 F.3d at 511; _Seaman_, 179 F.3d

---

[28]Defendant's Motion for Summary Judgment, Docket Entry No. 39, pp. 12-13 (citing Adams Declaration, p. 4 ¶ 12).

[29]Plaintiff's Opposition, Docket Entry No. 43, p. 17.

[30]_Id._ at 18.

at 300.  Since it is undisputed that Unisoft did not replace Carbaugh but, instead, passed his duties on to existing employees, Carbaugh is unable to establish this element merely by showing that the existing employees to whom his duties were passed are not disabled.  See Guerro v. Preston, Civil Action No. H-08-2412, 2009 WL 2581568, *4 (S.D. Tex. August 18, 2009) (Atlas, J.) ("When a plaintiff has been terminated and his job duties are reassigned to existing employees who perform plaintiff's duties in addition to continuing to perform their previous duties, the employee has not been replaced for purposes of establishing his *prima facie* case.") (citing Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.")).  In order to show that he was replaced by existing employees, Carbaugh must present evidence showing that the existing employees did not continue to perform their own previous duties in addition to Carbaugh's duties.  See id. (citing Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997) (distinguishing Lilley "from a situation in which *A* is fired, *B* and *C* are assigned each to do half the work formerly done by *A*, and *D* is hired to do the work of *B* and *C* that they must give up to do *A*'s work.  That is replacement, even though *A*'s duties have been split among two (or more) employees.")).  See also Martin v. Bayland Inc., 403 F.Supp.2d 578, 583 (S.D. Tex. 2005), aff'd, 181 Fed. Appx. 422 (5th Cir. 2006) ("When a terminated employee's job

-21-

duties are distributed among other employees after termination, those employees do not replace the terminated employee."). Carbaugh has not made such a showing.

Alternatively, Carbaugh may present evidence that he was treated less favorably than other, non-disabled employees, or that he was otherwise discharged because of his disability. In disparate treatment cases — which Carbaugh contends this case is — plaintiff-employees must show that their employer gave preferential treatment to a similarly situated employee under nearly identical circumstances. See Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507, 514 (5th Cir. 2001). Nearly identical circumstances include the performance or misconduct issues that the employer asserts as the basis for the challenged adverse employment action. Id. See also Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 305 (5th Cir. 2000), cert. denied, 121 S.Ct. 1081 (2001).

Carbaugh fails to point to any evidence from which a reasonable fact-finder could conclude that Unisoft treated him any differently than it treated any other employee under the same or similar circumstances or that he was otherwise discharged because of his disability. Carbaugh fails to identify any employee who was similarly situated with respect to the job performance issues identified by Unisoft as the basis for Carbaugh's discharge. This deficiency is fatal to Carbaugh's attempt to establish disparate treatment.

-22-

(iv)   Conclusions as to <u>Prima Facie</u> Case

Although Carbaugh has presented evidence sufficient to raise genuine issues of material fact as to whether he is disabled and as to whether he suffered an adverse employment action, because Carbaugh has failed to present evidence that he was either replaced by or treated less favorably than non-disabled employees or that he was otherwise discharged because of his disability, the court concludes that Carbaugh has failed to establish a <u>prima facie</u> case that Unisoft terminated his employment because of his disability.

> **(2)   Carbaugh Has Not Presented Evidence that Unisoft's Legitimate, Non-Discriminatory Reasons for Terminating His Employment are Pretexts for Disability Discrimination**

Even if Carbaugh had produced evidence capable of establishing a <u>prima facie</u> case of disability discrimination, he has failed to present evidence capable of rebutting Unisoft's legitimate, non-discriminatory reasons for terminating his employment.   Citing Adams' testimony, Unisoft asserts that Carbaugh resigned and argues that it did not permit Carbaugh to return to work after he expressed second thoughts because Carbaugh

> had been insubordinate with his direct supervisor in general and in the email sent on April 30, 2009, was falling behind on assigned tasks, was reviewing industry related emails instead of performing his assigned work as instructed, and abandoned his job in the middle of the workday without authorization.[31]

---

[31]Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 13.

Citing <u>Manaway v. Medical Center of Southeast Texas</u>, 430 Fed. Appx. 317, 322 (5th Cir. 2011), Unisoft argues that insubordination and failure to follow instructions are legitimate, non-discriminatory reasons for termination.

Because an essential element of most jobs is an ability to appear for work and to complete assigned tasks within a reasonable period of time, <u>see Rogers v. International Marine Terminals, Inc.</u>, 87 F.3d 755, 759 (5th Cir. 1996), Unisoft's stated reasons for its decision either to discharge Carbaugh or not to reinstate him are legitimate, non-discriminatory reasons.   <u>See also Chaney v. New Orleans Public Facility Management, Inc.</u>, 179 F.3d 164, 167-68 (5th Cir. 1999), <u>cert. denied</u>, 120 S.Ct. 1439 (2000) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee.").   Accordingly, the burden shifts to Carbaugh to present evidence that Unisoft's stated reasons are not the true reasons for his discharge but, instead, are pretexts for disability discrimination.   Carbaugh may create a genuine issue of material fact as to pretext by showing that Unisoft's proffered reasons are unworthy of credence, and by showing that a discriminatory reason motivated Unisoft.   "The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiff's] termination." <u>Sandstad</u>, 309 F.3d at 899.

Carbaugh has not offered any evidence in opposition to Unisoft's evidence that on April 30, 2009, he was falling behind on assigned tasks, he was reviewing industry-related e-mails instead of performing his assigned work as instructed, he was insubordinate to his direct supervisor in an e-mail, and he abandoned his job in the middle of the workday. Instead, Carbaugh asserts that Unisoft's conduct "since May 1, 2009 and in defending this suit establishes pretext."[32] Citing his own declaration Carbaugh explains that

> not a single bit of documentation has been produced which states any reason for Carbaugh's termination. Not one shred of paper exists. When Carbaugh confronted Logue about reasons for his termination, Logue responded that "it is [Unisoft's] policy not to provide written details surrounding an employee's termination." Pl. Ex. 13. Logue continues to say: "it is [Unisoft's] stance that you resigned from employment with [Unisoft]." Pl. Ex. 13.
>
> Carbaugh asked [Unisoft] to provide reasons for termination in Interrogatories. Interrogatory No. 1 was: "State the complete reason why Mark Carbaugh was terminated." Pl. Ex. 14. [Unisoft] answered "Mr. Carbaugh was not terminated." Pl. Ex. 14. [Unisoft] did not object to this interrogatory. Pl. Ex. 14.
>
> Now, [Unisoft] offers the reasons of "insubordi-nation" "falling behind on assigned tasks" "was reviewing industry related emails instead of performing his assigned work as instructed," and "abandoned his job in the middle of the workday without authorization" as its "legitimate business reasons" and suggests that Carbaugh would have been terminated anyway. Def. Ex. 1. None of these reasons, although obviously known to [Unisoft] were included in the response to the Interrogatory. This

---

[32]Plaintiff's Opposition, Docket Entry No. 43, pp. 19-20.

contradiction in sworn statements is a credibility issue for the jury.[33]

Citing <u>Alvarado v. Texas Rangers</u>, 492 F.3d 605, 615-16 (5th Cir. 2007), for the rule that in providing a non-discriminatory reason the employer must use admissible evidence and its reason must be clear and reasonably specific so that plaintiff can be afforded a full and fair opportunity to demonstrate pretext, Carbaugh argues that "[c]oncealing these reasons until the motion for summary judgment does not meet this standard."[34] Citing <u>Gee v. Principi</u>, 289 F.3d 342, 347-48 (5th Cir. 2002), as well as a number of cases from other circuits, Carbaugh argues that Unisoft's "[s]hifting explanations for reasons for termination (here 'he resigned' to 'he was a bad employee and we would have fired him anyway') are sufficient to permit a jury to find pretext."[35]

As additional evidence of pretext, Carbaugh asserts that

Adams did nothing and did not respond in person, via email, or by phone.

Adams did not call Carbaugh out for any of the reasons that he now suggests were his "legitimate business reasons" for termination. Adams did not counsel Carbaugh, did not produce a document regarding termination, and did not even produce a document which "accepted his resignation." Adams was obviously familiar with the procedure for counseling and the paperwork required by [Unisoft] because he previously disciplined Carbaugh for matters which were related to his health conditions. Pl. Ex. 5.

---

[33]<u>Id.</u>

[34]<u>Id.</u> at 20 n.14.

[35]<u>Id.</u> at 21.

> . . . Instead, Adams drove to Houston the next day
> (he works in Austin), waited until the end of the day,
> and presented Carbaugh with the *fait accompli* — his
> termination and severance agreement.[36]

The undisputed evidence contradicts Carbaugh's version of the
facts, and neither the Fifth Circuit's decisions in <u>Alvarado</u> nor in
<u>Gee</u> support his argument that the dispute over whether he resigned
or was discharged is sufficient to prove pretext.

In <u>Alvarado</u> a female state trooper applied for a transfer to
the Texas Rangers that she did not receive.  The Fifth Circuit held
that the employer's subjective reason for not selecting a
candidate, e.g., a subjective assessment of the candidates'
performance during an oral interview, may serve as a legitimate,
nondiscriminatory reason for the candidate's non-selection for
purposes of the candidate's discrimination claim, but only if the
employer articulates a clear and reasonably specific basis for its
subjective assessment.  <u>Alvarado</u>, 492 F.3d at 616.  The Fifth
Circuit explained that the defendant employer had not satisfied its
burden to proffer a legitimate, nondiscriminatory reason because it
had provided no explanation for how the interviewers arrived at the
scores for each interview, and because each score "is at least as
consistent with discriminatory intent as it is with nondiscrimi-
natory intent because [the plaintiff] may well have received the
relatively low interview score on account of her sex."  <u>Id.</u> at 617.
<u>Alvarado</u> stands for the unremarkable proposition that employers may

---

[36]<u>Id.</u> at 20-21.

-27-

not use entirely subjective criteria to defeat a plaintiff's <u>prima</u> <u>facie</u> case. <u>See</u> <u>id.</u> at 617 ("We simply hold that, given DPS's failure to evidence the grounds for the Board's scoring of Alvarado and the other candidates in the second, subjective stage of the promotion and selection process, DPS has failed to proffer a reason for Alvarado's non-selection that, if believed, would allow the jury to conclude that Alvarado's non-selection was not the result of intentional sex discrimination."). "Because DPS ha[d] not satisfied its burden of producing evidence tending to show that it had a legitimate, nondiscriminatory reason for not appointing Alvarado to the Rangers, [the Fifth Circuit did] not reach the question of whether Alvarado could demonstrate pretext." <u>Id.</u> at 618.

Unlike <u>Alvarado</u> where the defendant employer failed to articulate a clear and reasonably specific basis for the adverse employment action at issue, Unisoft — acting through Adams and Logue — told Carbaugh that his actions on April 30, 2009, in particular his e-mail to Adams and his removal of personal items from his office, were interpreted as a resignation. Although on May 1, 2009, Carbaugh told Adams and Logue that he did not intend to resign, Adams and Logue explained to Carbaugh that as a result of his actions on April 30, 2009, he no longer had a job at Unisoft. On May 19, 2009, Unisoft reiterated its position in an e-mail to Carbaugh in which Logue stated:

-28-

. . . [I]t is [Unisoft's] policy not to provide written
details surrounding an employee's termination.  This is
not tied to whether or not you decide to accept the terms
of the Confidential Release and Severance Agreement,
which is at your sole discretion.

Further, based on your e-mail communication to Kevin on
Thursday, April 30 at approximately 13:22, it is
[Unisoft's] stance that you resigned from employment with
[Unisoft]. Further support of this position, is the fact
that you removed most of your personal itmes from your
office the same evening.[37]

On June 29, 2009, Unisoft restated its position in greater detail
in a letter to Lucia Pan, Investigator, Equal Employment
Opportunity Commission (EEOC), in which Unisoft's attorney
reproduced Carbaugh's April 30, 2009, e-mail to Adams and stated:

Mr. Carbaugh then left the office for the day without
authorization.  The following morning, Mr. Adams was
advised by Michael Taylor [DOB: 9/25/58], President, that
Mr. Carbaugh had cleaned out his office.

    Given the fact that Mr. Carbaugh had walked off the
job without permission, indicted that he "could not work
for [Mr. Adams]," and cleaned out his office, Mr. Adams
determined that Mr. Carbaugh had voluntarily resigned his
employment with [Unisoft].  Consequently, on the morning
of May 1, 2009, Mr. Adams contacted Rick Logue [DOB:
9/12/50], Chief Financial Officer, to complete the
separation paperwork, as well as to calculate and send
Mr. Carbaugh his final paycheck.  In addition, Mr. Adams
scheduled a trip from Austin to [Unisoft's] office in
Kingwood in order to meet with Mr. Carbaugh and
Mr. Logue.  This meeting occurred at approximately
4:00 p.m. on May 1, 2009.  During that meeting,
Mr. Carbaugh attempted to rescind his resignation.  Given
the circumstances including, but not limited to,
Mr. Carbaugh's insubordination and continued failure to
follow Company policy, [Unisoft] refused to allow
Mr. Carbaugh to rescind his resignation.[38]

---

[37]Exhibit 13 to Plaintiff's Opposition, Docket Entry No. 43.

[38]Exhibit 11 to Plaintiff's Opposition, Docket Entry No. 43,
page 4 of the letter.

In Gee, 289 F.3d at 347-48 (5th Cir. 2002), the plaintiff and another person were being considered for a position at the Department of Veterans' Affairs.   When the plaintiff was not selected she sued the defendant for retaliation for having complained of sex discrimination two years earlier.   The district court granted summary judgment to the defendant after concluding that the plaintiff had failed to present evidence from which a reasonable fact-finder could conclude that the defendant's legitimate, non-discriminatory reason for not selecting the plaintiff was a pretext for retaliation, i.e., that Dr. Gibbs selected the other candidate because he believed that she would be able to get along well with physicians, and because he had received negative feedback on the plaintiff from several of her coworkers. The Fifth Circuit reversed, explaining that the plaintiff had satisfied her burden of raising a genuine issue of fact as to pretext by pointing to

> discrepancies between Gibbs' affidavit given during the investigation and his testimony at the administrative hearing.  Specifically, she note[d] that although he initially denied that he participated in a meeting relating to [her] position, Gibbs later admitted that he had attended such a meeting.  Asked why he did not disclose this fact during the investigation, he responded that he did not know.  In addition to this omission, after originally claiming that others were not involved in the selection process, Gibbs later admitted that he conferred with several people. Moreover, although Gibbs at first was unable to recall the substance of the statements made about [the plaintiff] at the meeting, he later testified that everyone made comments and the general tenor of those comments was unfavorable.

Gee, 289 F.3d at 347-48.

-30-

Unlike the plaintiff in <u>Gee</u> who pointed to factual discrepancies in the decision-maker's statements regarding his reasons for selecting the other candidate, Carbaugh has not pointed to any factual discrepancies in Unisoft's reasons for the adverse employment action at issue.  Instead, Carbaugh argues that Unisoft originally contended that he had resigned but, later, at the summary judgment stage of this case, Unisoft contradicted its original position by arguing that Carbaugh would have been discharged for cause even if he had not resigned.  The undisputed evidence is (1) that Unisoft treated Carbaugh's e-mail of April 30, 2009, coupled with his leaving work in the middle of the day and removing many of his personal possessions from the office, as evidence that Carbaugh had resigned, and (2) that Unisoft denied Carbaugh's request for reinstatement based on his e-mail and other actions on April 30, 2009.  Unisoft has maintained the same position throughout this action as evidenced by Logue's May 19, 2009, e-mail to Carbaugh, Unisoft's July 29, 2009, letter to the E.E.O.C., and Unisoft's motion for summary judgment based in part on the contention that Carbaugh did not suffer an adverse employment action because he resigned, and because Unisoft had legitimate, non-discriminatory reasons for failing to reinstate Carbaugh when he had second thoughts about resigning.

The fact situation in this case is distinguishable from the one presented in <u>Gee</u> because Unisoft never retracted and offered new or different explanations for the adverse employment action

about which Carbaugh complains.  While the parties dispute whether the events of April 30 and May 1, 2009, show that Carbaugh resigned and Unisoft refused to reinstate him when he had a change of heart, or whether they show that Unisoft discharged Carbaugh, there is no dispute about what actions Carbaugh took on April 30, 2009, and there is no dispute that those actions resulted in his job loss. See Howard v. United Parcel Service, Inc., Civil Action No. 3:09-CV-2074-K, 2011 WL 195682, *5-*6 (N.D. Tex. January 18, 2011) (distinguishing facts showing that defendant-employer consistently stated the reasons for plaintiff's demotion as poor job performance and integrity issues from the facts of Gee where the defendant-employer retracted and offered new or different factual reasons for plaintiff's demotion).

Carbaugh's additional evidence that Adams did not attempt to contact or counsel him on April 30, 2009, provides no evidence that Unisoft's reasons for terminating his employment are pretextual in nature but, instead, demonstrates that Unisoft had multiple legitimate, non-discriminatory reasons for discharging Carbaugh. For example, Carbaugh refers to Plaintiff's Exhibit 5.  Plaintiff's Exhibit 5 is the Employee Counseling Form from January 2009 when Adams counseled Carbaugh for failing to submit reports in a timely fashion and warned Carbaugh that future infractions would result in termination.  See Strong v. University Healthcare System, L.L.C., 482 F.3d 802, 807 (5th Cir. 2007) (affirming district court's grant of employer's motion for summary judgment based upon evidence that

final disciplinary problem was "last straw" after previous incidents). The court concludes that Carbaugh has failed to present evidence from which a reasonable jury could conclude that the non-discriminatory reasons Unisoft has presented for discharging Carbaugh are not true but, instead, are pretexts for disability discrimination.

3. Claim for Failure to Reasonably Accommodate

Carbaugh argues that he "requested accommodations, but was refused."[39] Unisoft argues that it is entitled to summary judgment on Carbaugh's reasonable accommodations claim because the only accommodations Carbaugh ever requested were granted.[40]

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also that

[39]Plaintiff's Opposition, Docket Entry No. 43, p. 2.

[40]Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 15 (citing Adams Declaration, p. 4 ¶ 11, and Plaintiff's Deposition (Vol. 1), Exhibit 1 to Tipton Declaration, pp. 59:13-60:3, 100:23-101:13).

the physical or mental limitations resulting therefrom required an accommodation. <u>See</u> 29 C.F.R. 1630.9, App. (1995). <u>See also</u> <u>Taylor v. Principal Financial Group, Inc.</u>, 93 F.3d 155, 163 (5th Cir. 1996) (affirming district court's holding that plaintiff's failure to establish that he had asked for a reasonable accommodation failed to establish a <u>prima facie</u> case because absent request for a reasonable accommodation plaintiff had failed to place employer on notice that his disability required an accommodation).

Carbaugh argues that Unisoft failed to accommodate his disability-engendered limitations by not providing sufficient time for him to complete reports and by denying requests for time off relating to his MS.[41]  In support of this argument Carbaugh cites ¶¶ 8-10 and 22-24 of his own declaration, and Exhibit 8 to Plaintiff's Opposition.  Carbaugh's evidence does not support his claim that Unisoft failed to reasonably accommodate his disability because it does not show that Carbaugh ever requested a reasonable accommodation, or that Unisoft ever denied a request for additional time to complete reports or for time off related to his MS.

Carbaugh states that "[s]ometimes, I was denied the day off and looked down upon for tardiness that was related to my disease,"[42] and "Adams and Taylor were aware of [that I suffered from fatigue] but still demanded that I come in and work in this

---

[41]Plaintiff's Response, Docket Entry No. 43, p. 18.

[42]Carbaugh Declaration, attached to Plaintiff's Opposition, Docket Entry No. 43, p. 2 ¶ 9.

state of severe fatigue because of my MS.  They did not help me or tolerate my disability when it came to needing time off."[43]  But Carbaugh has failed to identify any specific request that he made either for additional time to complete reports, or for time off related to his MS.  Instead, Carbaugh has submitted evidence of several requests for days off that were granted, e.g.:

> 8.    This was an issue that Adams and Michael Taylor knew about and after traveling to a client site during which I worked many hours of overtime I would suffer from severe fatigue.  Upon returning from the trip I would be late to work, have to make up the time or I would ask for a day off because of the amount of time I worked during the trip.

> 9.    Sometimes, I was denied the day off and looked down upon for tardiness that was related to my disease. Working in the state of severe fatigue and cognitive issues I had slurred speech and also logical thinking problems.   This caused issues when giving Webcasts for the salesmen.   At times I did not sound professional because of the slurred speech and also did not appear to know the product because of the long pauses in my speech.

> 10.  Adams and Taylor were aware of this but still demanded that I come in and work in this state of severe fatigue because of my MS.  They did not help me or tolerate my disability when it came to needing time off. . . .

> . . .

> 14.  In October of 2008, I requested time off for my MS symptoms.  A true and correct copy of the request form is attached as Exhibit 3 to this response.  I was given that time off.

> 15.  In December of 2008, I again requested time off for my MS symptoms.  A true and correct copy of the request form is attached as Exhibit 4 to this response.  I was given that time off.

---

[43]Id. ¶ 10.

. . .

17.  In January of 2009, I was disciplined for "refusal
to perform assigned work."   I was threatened with
termination.  A true and correct copy of the disciplinary
form is attached as Exhibit 5 to this response.

18.  I wrote that "health conditions have contributed to
this issue.  This is not a refusal to do required work.
But the diminished capabilities.  Also unscheduled
interruptions and requests for information from sales
consume a lot of time."   I signed this document on
January 6, 2009, but made clear the reasons for being
late in completing the reports to Adams.

. . .

21.  In February of 2009, I was incomplete in my expense
report because I had a doctor's appointment and was
required to train a new employee.  I told Adams.  He
responded that I could have worked over the weekend.  He
told me that I had to choose between my doctor's
appointment and work.  A true and correct copy of this
email chain is attached as Exhibit 6 to this response.

22.  I requested a meeting with Taylor and Adams.  I
recorded this request in my status reports.  I wrote:
"Requested a meeting with Michael [Taylor] in regards to
Kevin's email."  [Pl. Ex. 6 at Carbaugh 0116 (Tuesday
entry)] and "Meeting with Kevin and Michael concerning
trip reports."  [Pl. Ex. 6 Carbaugh 0119].

23.  I told them that I had been working more than 40
hours per week.  Adams disagreed and said that I had not
been working enough time.  Adams said words to the effect
that he felt that I was "on the take from [Unisoft]."  I
understood this to mean that I was taking money from
[Unisoft] without working.  I showed them a report that
I was working more than 40 hours per week on two specific
jobs, the Florida Department of Revenue and PNB (A Bank).
A true and correct copy of the document I gave them is
attached as Exhibit 7 to this response.  It showed that
I worked 63.25 hours one week and 72.5 hours during
another week.  My trip reports and status reports
generally note the time I got to work and the time I
left.

24.  I told them that I had been getting comments about
working late.  Taylor responded, "I don't want to hear

anything about overtime." This constitutes a complaint about the fact that I was working over 40 hours a week without compensation. I then asked if I could receive compensatory time for the over 40 hours. I was told no. Adams said that traveling and working were part of the job.

. . .

26. On March 26 and 27, 2009, I had reached the end of my reserves of strength. I was seriously fatigued after having had two back to back trips and being required to train our German reseller of the product. I requested and received leave for "fatigue." This was the result of my MS symptoms and Adams knew this. A true and correct copy of this request is attached as Exhibit 8 to this motion.

. . .

31. On April 30, 2009, I arrived at work at 8:30 a.m. I received a Google security email. I reviewed it and passed the link onto Glenn and others, including Gordy Drost and Michael Taylor. I did nothing more than send the link, as reflected in Pl. Ex. 9. I reviewed the email because it was a security alert. As [Unisoft] was trying to use Google mail, I read the security alert. I did not do this to avoid working. I was concerned for [Unisoft].

. . .

33. The email was forwarded to Adams. Adams responded in an insulting and demeaning manner. Adams had been insulting and demeaning to me the entire month and in particular that week. Adams reminded me in capital letters that EVERY email I sent was to be copied to him. I did not even have the discretion or the ability to exercise independent judgment about who received my emails.

34. I responded to the email but felt my MS symptoms flaring up. I began to get confused and sick. I was experiencing some vertigo and having a hard time typing and thinking. I decided that I needed to go home and told Adams that I was leaving. This was exactly the procedure that I was told to follow.[44]

_____

[44]Id. at ¶¶ 8-10, 14-15, 17-18, 21-24, 26, 31, and 33-34.

Carbaugh's evidence shows that in January of 2009 he was
behind in completing Trip Reports from 2008.  On January 6, 2009,
Adams counseled Carbaugh for failing to complete his 2008 Trip
Reports, and in response to the counseling, Carbaugh stated that

> health conditions have contributed to this issue.  This
> is not a refusal to do required work, but the diminished
> capabilities.   Also   unscheduled   interruptions   and
> requests for information from sales consume a lot of
> time.[45]

Adams gave Carbaugh until January 31, 2009, to complete the 2008
Trip Reports but counseled him that failure to keep up with future
reports would result in termination.[46]  Carbaugh has not produced
any  evidence  showing  that  he  ever  requested  a  reasonable
accommodation in the form of extra time to complete trip reports.

Carbaugh's  evidence  shows  that  in  February  of  2009  he
experienced an issue related to completion of an expense report.
The e-mail chain that Carbaugh cites in support of his argument
that Adams told him to choose between his doctor's appointment and
work, does not support Carbaugh's version of the facts.  The e-mail
chain shows that at 3:36 p.m. on Tuesday, February 17, 2009,
Carbaugh wrote to Adams, "Are expenses due today as well?"[47]
Although the exhibit does not contain Adams' response, it does
contain another e-mail from Carbaugh to Adams written at 3:45 p.m.
stating:

_____

[45]Exhibit 5 to Plaintiff's Opposition, Docket Entry No. 43.

[46]<u>Id.</u>

[47]Exhibit 6 to Plaintiff's Opposition, Docket Entry No. 43.

-38-

> Ok.  Unfortunately I will not be able to add as much
> detail as I want so I will be posting what I have and
> moving to the expense report.  Some activity will be
> unreported.  I did as much as I could in the hotel and
> had 1 half day yesterday and no time today since I was
> training Kim.[48]

At 4:47 p.m. Adams responded:

> Do what you can, then.
>
> You knew that you had this class to teach on Tuesday.
> You knew that you had a medical appointment on Monday
> afternoon.  You made the choice on whether to work over
> the weekend or not.
>
> You knew how much time you had (2½ days) and you knew
> what needed to be done.  This situation was not caused by
> a lack of time, just a result of choices.[49]

There is no evidence that Carbaugh failed to submit the expense

report on time, or that he requested additional time to do so.

Although in ¶¶ 8 and 10 of his declaration Carbaugh asserts

that sometimes Unisoft denied his requests for time off, Carbaugh

has not identified any specific request for time off that was

denied, but Carbaugh has identified several specific requests for

time off that were granted, e.g., in ¶¶ 14, 15, and 26 of his

declaration.  Because Carbaugh has failed to present any evidence

showing that he ever requested additional time to complete reports

that was not granted, or that he ever requested time off for

treatment of MS-related symptoms that Unisoft denied, the court

concludes that Unisoft is entitled to summary judgment on

---

[48]Id.

[49]Id.

Carbaugh's claim for failure to reasonably accommodate his disability.  See Taylor, 93 F.3d at 165 (The "employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process. . .").

### 4.   Conclusions as to Disability Claims

For the reasons explained above, the court concludes that Carbaugh has failed to present any direct evidence that Unisoft terminated his employment because of his disability, has failed to present sufficient circumstantial evidence to establish a prima facie case that Unisoft terminated his employment because of his disability, and has failed to present any evidence from which a reasonable fact-finder could conclude that the legitimate, non-discriminatory reasons that Unisoft has stated for terminating Carbaugh's employment were not true but, instead, were pretexts for disability discrimination.  The court also concludes that Carbaugh has failed to present evidence from which a reasonable fact-finder could conclude that Unisoft failed to reasonably accommodate his alleged disability (MS).  Therefore, the court concludes that Unisoft is entitled to summary judgment on Carbaugh's claims for disability discrimination under both the ADA and the TCHRA.

## B.   Age Discrimination Claims

Asserting that he is over forty years old, Carbaugh alleges that he was terminated because of his age in violation of the ADEA

and the TCHRA.[50]   Unisoft argues that it is entitled to summary judgment on Carbaugh's age discrimination claims because Carbaugh cannot establish (1) that he suffered an adverse employment action, (2) assuming he suffered an adverse employment action, that it was because of his age, (3) that he was replaced by or treated less favorably than a younger employee, or (4) that Unisoft's legitimate, non-discriminatory reasons for refusing to allow Carbaugh to rescind his resignation are pretexts for age discrimination.[51]

### 1.   Applicable Law

The ADEA provides, in relevant part, that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1).   "A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof."   Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004).   "If a plaintiff produces direct evidence of discrimination, no further showing is required, and the burden shifts to the employer."   Berquist v. Washington Mutual Bank, 500

---

[50]Plaintiff's First Amended Complaint, Docket Entry No. 15, p. 6.

[51]Defendant's Motion for Summary Judgment, Docket Entry No. 39, pp. 16-18.

F.3d 344, 349 (5th Cir. 2007), cert. denied, 128 S.Ct. 1124 (2008) (citing Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613 (1985)).  A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision.  Id. (citing Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006)).  Because the law governing age discrimination claims under the ADEA and the TCHRA is "substantively identical," these claims may be considered together. See McClaren v. Morrison Management Specialists, Inc., 420 F.3d 457, 461 (5th Cir. 2005).

### 2.  Analysis

Carbaugh contends that he "has provided direct evidence of age discrimination in the form of statements by the President of [Unisoft] that he was no longer going to hire 'gray hairs.'"[52] Carbaugh explains

> I remember a meeting with Taylor regarding new hires from France.  At that meeting, Taylor extolled the virtue of young employees and how hard they worked.  Taylor commented that [Unisoft] would no longer hire people with gray hair.  That night, I went out and bought hair dye and dyed my gray hair back to its previous color.[53]

Carbaugh has not presented circumstantial evidence of age discrimination.

---

[52]Plaintiff's Opposition, Docket Entry No. 43, p. 2.

[53]Carbaugh Declaration, attached to Plaintiff's Opposition, Docket Entry No. 43, p. 7 ¶ 47.

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." West, 330 F.3d at 384 n.3 (quoting Sandstad, 309 F.3d at 897). For example, in Rachid, 376 F.3d at 315, the plaintiff presented evidence that the decision maker told the plaintiff, ". . . you're too old." The court held that "such comments preclude summary judgment because a rational trier of fact could conclude that age played a role in [the employer's] decision to terminate [plaintiff]." Id. at 315-16. However, the Fifth Circuit has also "repeatedly held that 'stray remarks' do not demonstrate age discrimination." EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996). "In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." Moss v. BMC Software, Inc., 610 F.3d 917, 929 (5th Cir. 2010) (citing Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 958 (5th Cir. 1993)).

> Remarks may serve as sufficient evidence of age discrimination if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue.

Id. (quoting Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th Cir. 2001)).

Asserting that Taylor said Unisoft would no longer hire "gray hairs," Carbaugh argues that Taylor's statement constitutes direct

evidence that Unisoft's decision to terminate his employment was motivated by discriminatory animus for his age.  But Carbaugh has not produced evidence showing that Taylor's statement was directed to him or was proximate in time or related to his discharge. Absent an evidentiary connection between Taylor's statement and the discharge about which Carbaugh complains, a fact-finder would have to infer that Taylor's intent not to hire "gray hairs" manifested itself in Unisoft's decision to discharge Carbaugh.  Because direct evidence of discrimination is evidence that does not require inferences to connect alleged discriminatory conduct with a plaintiff's protected characteristics, the statement that Carbaugh attributes to Taylor is not direct evidence that his discharge was motivated by age discrimination because its was not made to Carbaugh, and was not made in the context of an employment decision involving Carbaugh or any other employee.  In short, a jury could not, based on this one comment, "conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate [Carbaugh]." <u>Moss</u>, 610 F.3d at 929.  Because Carbaugh has failed to present direct evidence that age played any role in Unisoft's decision to discharge him, the court concludes that Unisoft is entitled to summary judgment on Carbaugh's age discrimination claims under both the ADEA and the TCHRA.

**D.   FLSA Claims**

   Asserting that while employed by Unisoft he regularly worked in excess of forty hours per week, Carbaugh alleges that

-44-

> Defendant has violated the FLSA by failing to pay
> Carbaugh for time worked in excess of forty hours per
> week.  Defendant violated the FLSA by failing to maintain
> accurate records of Plaintiff's working hours.  Defendant
> violated the FLSA by failing to pay Plaintiff his
> overtime wages by the deadline(s) set forth in the
> FLSA.[54]

Carbaugh also alleges that Unisoft terminated his employment in retaliation for raising the issue about the substantial number of hours he had been working without additional compensation.[55] Unisoft argues that it is entitled to summary judgment on Carbaugh's FLSA claim for failure to pay overtime because Carbaugh was exempt from the FLSA's overtime requirements, and that it is entitled to summary judgment on Carbaugh's claim for FLSA retaliation because Carbaugh cannot establish a <u>prima facie</u> case, and cannot establish that Unisoft's legitimate, nondiscriminatory reasons for discharging him are pretexts for retaliation.

1.   <u>Overtime Pay</u>

The FLSA provides that certain categories of employees are exempt from overtime requirements.  <u>See</u> 29 U.S.C. § 213. Specifically, the wage and hour requirements of the FLSA do no apply to "any employee in a bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  United States Department of Labor (DOL) regulations define an administrative employee as someone:

---

[54]Plaintiff's First Amended Complaint, Docket Entry No. 15, p. 7 ¶ 63.

[55]<u>Id.</u> at 7-8.

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). There is no dispute regarding the first element of this claim, i.e., that Carbaugh was paid on a salary basis at a rate that exceeded $455 per week, but whether Carbaugh has presented evidence creating genuine issues of material fact as to the second and third elements of this claim is disputed.[56]

DOL regulations provide that

[a]n employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201(c). This work is defined as "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The regulation also provides:

---

[56]See Defendant's Motion for Summary Judgment, Docket Entry No. 39, pp. 20-28; Plaintiff's Opposition, Docket Entry No. 43, pp. 22-31; and Defendant's Reply, Docket Entry No. 49, pp. 14-20.

> To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

Citing Carbaugh's deposition, Unisoft argues that Carbaugh's own testimony establishes that the services he performed for Unisoft's customers satisfies these criteria because it establishes that Carbaugh was a consultant to Unisoft's clients who was responsible for working with those clients at their facilities around the world to help them make their businesses run more efficiently. Unisoft also argues that Carbaugh's own testimony establishes that Carbaugh's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. In support of these arguments, Unisoft cites three cases in which federal courts have granted summary judgment in similar factual scenarios involving consultants who, like Carbaugh, implemented and installed software programs for their employer's clients and customers: Cruz v. Lawson Software, Inc., 764 F.Supp.2d 1050 (D. Minn. 2011) (holding that the discretion to make recommendations can suffice to establish the "exercise of discretion and independent judgment" element of the administrative exemption); Verkuilen v. MediaBank, No. 09-C-3527, 2010 WL 3003860

-47-

(N.D. Ill. July 27, 2010), aff'd 646 F.3d 979 (7th Cir. 2011) (holding that employee who provided service and support to customers who bought her employer's software fell under administrative exemption upon concluding that employee exercised discretion because "when confronted with a client's problem in using [her employer's] software, [the employee] determined the nature of the problem and how to handle it"); and Morgan v. CMS/Data Corporation, Civil Action No. H-97-0322 (S.D. Tex. 1998) (Werlein, J.), aff'd 166 F.3d 341 (5th Cir. 1998) (holding that project manager whose main job was to oversee the implementation of and conversion to her employer's billing software at offices of her employer's customers was subject to administrative exemption).

Carbaugh argues that Unisoft is not entitled to summary judgment on his claim for overtime pay because he

> did not exercise independent judgment, could not sell the product, could not modify the product, and could not leave or stay longer than authorized.  Carbaugh did not exercise the sort of discretion and judgment which meets the exception.[57]

Asserting that Unisoft conflates skill with discretion and independent judgment, Carbaugh argues that the cases on which Unisoft relies are all distinguishable.  Carbaugh argues that Cruz is distinguishable because the plaintiff in that case designed, developed, and implemented a computerized information system, but

---

[57]Plaintiff's Opposition, Docket Entry No. 43, p. 22.  See also Plaintiff Carbaugh's Sur-Reply to Defendant's Reply to Carbaugh's Response to Motion for Summary Judgment, Docket Entry No. 52, pp. 7-9.

Carbaugh did not design, develop, or implement the OpCon/xps system but, instead, only investigated, installed, and provided associated services.[58]   Carbaugh argues that <u>Verkuilen</u> is distinguishable because

> Verkuilen's primary duty was to act as a liaison between MediaBank and its customers to facilitate customer's use of the software.  It was not to do the nitty-gritty computer installation and configuration work. <u>Verkuilen</u>, at *4.  Carbaugh actually did the "nitty gritty computer installation and configuration work."[59]

Asserting that the <u>Morgan</u> case decided by Judge Werlein is strikingly similar to <u>Verkuilen</u>, Carbaugh argues that it, too, is distinguishable for the same reasons.

The undisputed evidence shows that Carbaugh was responsible for demonstrating Unisoft's OpCon/xps product to potential clients, going to clients' sites, consulting with clients to assess their needs and capabilities, installing and tailoring Unisoft's OpCon/xps software to suit the clients' needs, troubleshooting problems, training the clients, working with Unisoft's programmers and coders to provide them information they needed to produce software that suited the clients' needs, and then verifying that the software performed as needed.[60]  Carbaugh either installed and

---

[58]<u>Id.</u> at 31.

[59]<u>Id.</u> at 30.

[60]Carbaugh's Deposition, Vol. 1 at 26:24-27:11, 32:23-53:16, Exhibit 1 to Tipton Declaration, attached to Defendant's Motion for Summary Judgment, Docket Entry No. 39.  <u>See also</u> Carbaugh Declaration, attached to Plaintiff's Opposition, Docket Entry No. 43, pp. 7-9 ¶¶ 49-69, especially 68.

adopted the OpCon/xps program onto the client's software or oversaw and instructed the client on how to do it.  Carbaugh also suggested who at the client site should receive training, and developed and tailored the training modules.  Typically, Carbaugh was the only Unisoft employee at the client site.  In a resume that he prepared for use after his employment with Unisoft ended, Carbaugh stated that while working for Unisoft he facilitated and oversaw the development of standardized and remote product demonstrations, coordinated product training for all employees and customers, consulted with client businesses for new product ideas and enhancements, approved and prioritized new product versions and fixes, and interacted with the programmers and software designers for development, support, and quality assurance.  Carbaugh was also responsible for worldwide pre- and post-sales, installation, project management, and second-level support of OpCon/xps. Carbaugh was involved with infrastructure management, third party software and hardware management, recommendations and maintenance, and he developed and implemented cost savings to increase profit and revenue.[61]

The undisputed evidence establishes that Unisoft produces a software program that helps automate its clients' businesses.  The software is complex, and the changes it effects create enormous

---

[61]Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 25 (citing Carbaugh's Deposition, Vol. 2, Exhibit 2 to Tipton Declaration, and Carbaugh's Resume, Exhibit 16 to Exhibit 4 to Tipton Declaration).

challenges in terms of managing data and workflow.  Carbaugh was
neither a salesman nor a technician sitting at a phone bank
fielding random calls from his employer's customers.  Instead, he
traveled — alone — to the customer's location for the installation,
testing, and initial operation of the customer's OpCon/xps
software.  As the intermediary between the employees of the
customers who needed to master his employer's complex software and
the software developers, he had to identify the customers' needs,
translate them into specifications to be implemented, and assist in
the implementation.  Moreover, Carbaugh had to spend much, if not
most, of his time away from Unisoft's offices on the premises of
Unisoft's customers, many of whom were international customers.

The court is not persuaded that the distinctions Carbaugh
attempts to draw between the duties he performed at Unisoft and the
duties performed by the plaintiffs in Cruz, Verkuilen, and Morgan
are sufficient to create genuine issues of material fact for trial.
Instead, like the Seventh Circuit in its opinion affirming the
district court's grant of summary judgment in Verkuilen, the court
is persuaded that the undisputed evidence produced in this case
establishes as a matter of law that the duties Carbaugh performed
for Unisoft exempted him from FLSA's wage and hour provisions.  As
the Seventh Circuit observed in Verkuilen:

> The regulation's "primary duty" provisions . . . are
> pretty vague, as is the further provision that "to meet
> [the] requirement [that the employee's primary duty be
> directly related to management or general business

-51-

operations], an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." § 541.201(a). Notice the gap: employees who don't perform work directly related to assisting with the running or servicing of the employer's or its customers' business are not necessarily employees who "for example" work on an assembly line or work in a retail store as a salesperson.

Yet one sees what the regulation is getting at: a legal requirement to pay a worker a fixed percentage increase in his hourly wage if he works more than 40 hours a week doesn't fit a worker who spends much of his work time off the employer's premises, where he can't be supervised and so if entitled to overtime would be tempted to inflate his hours. See 29 C.F.R. § 541.202(c) . . . The danger is acute if, as the regulation also requires, the work involves the exercise of independent judgment relating to management or general business operations . . . especially the business operations of a customer. An employer will be hard pressed to determine how many hours an employee should need to complete a particular job much of which is performed on the premises of a different company and involves the application of independent judgment to that company's operations. Employees tasked with jobs requiring the exercise of independent judgment usually are expected to work with a minimum of supervision even when they are working in their office rather than on a customer's premises. . .

It might seem that in any event a requirement of additional compensation for overtime couldn't sensibly be applied to workers, such as the plaintiff in this case, whose hours of work vary from week to week, regardless of the nature of their work or where it is performed. . .

. . . [I]t is apparent that our plaintiff is a picture perfect example of a worker for whom the Act's overtime provision is not intended.

Verkuilen, 646 F.3d at 981. Accordingly, the court concludes that Unisoft is entitled to summary judgment of Carbaugh's claim for FLSA overtime.

2.   Retaliation

Carbaugh claims that he was discriminated against and discharged by Unisoft in retaliation for asserting a claim for overtime pay in violation of the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3).  Carbaugh explains that in February of 2009, during a meeting with Adams and Taylor regarding the tardiness of his trip and status reports,

> Carbaugh told Taylor and Adams that he was working more than 40 hours a week.  Pl. Ex. 1, ¶ 22.  Adams retorted that Carbaugh had not been working enough time and accused him of being "on the take from [Unisoft]." Pl. Ex. 1, ¶ 22.  Carbaugh gave Adams and Taylor a calculation of his hours showing more than 40 hours per week.  Pl. Ex. 1, ¶ 23; Pl. Ex. 7 (63.5 hours and 72.5 hours).
>
> Carbaugh also told them that other people commented on his long hours.  Pl. Ex. 1, ¶ 23.  Taylor said, "I don't want to hear anything about overtime."  Pl. Ex. 1, ¶ 24. . . .
>
> Carbaugh then requested that he be provided with compensatory time for the amount of extra time he was working.  Pl. Ex. 1, ¶ 24.  He was denied this request. Pl. Ex. 1, ¶ 24.  Carbaugh continued to work long hours. Pl. Ex. 1, ¶ 24.[62]

---

[62]Plaintiff's Opposition, Docket Entry No. 43, p. 4 (citing Exhibit 1, Carbaugh Declaration, ¶¶ 22-24:

> 22. I requested a meeting with Taylor and Adams.  I recorded this request in my status reports.  I wrote: "Requested a meeting with Michael [Taylor] in regards to Kevin's email."  [Pl. Ex. 6 at Carbaugh 0116 (Tuesday entry)] and "Meeting with Kevin and Michael concerning trip reports."  [Pl. Ex. 6 Carbaugh 0119].
>
> 23. I told them that I had been working more than 40 hours per week.  Adams disagreed and said that I had not
>
>                                         (continued...)

Carbaugh argues that within two months, he had been fired.[63]

Section 215(a)(3) provides in pertinent part:

[I]t shall be unlawful for any person . . . to discharge
or in any other manner discriminate against any employee
because such employee has filed any complaint or
instituted or caused to be instituted any proceeding
under this chapter.

29 U.S.C. § 215(a)(3).   Cases in which a plaintiff alleges
retaliation for engaging in protected activity under the FLSA are
analyzed under the burden-shifting framework established in
McDonnel Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).   See Hagan
v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008).
To establish a prima facie case of retaliation under the FLSA,
Carbaugh must show that:   (1) he engaged in protected activity

---

[62](...continued)
been working enough time.  Adams said words to the effect
that he felt that I was "on the take from [Unisoft]."  I
understood this to mean that I was taking money from
[Unisoft] without working.  I showed them a report that
I was working more than 40 hours per week on two specific
jobs, the Florida Department of Revenue and PNB (A Bank).
A true and correct copy of the document I gave them is
attached as Exhibit 7 to this response.  It showed that
I worked 63.25 hours one week and 72.5 hours during
another week.   My trip reports and status reports
generally note the time I got to work and the time I
left.

24.  I told them that I had been getting comments about
working late.  Taylor responded, "I don't want to hear
anything about overtime."  This constitutes a complaint
about the fact that I was working over 40 hours a week
without compensation.  I then asked if I could receive
compensatory time for the over 40 hours.  I was told no.
Adams said that traveling and working were part of the
job.

[63]Id. at 31.

under the FLSA, (2) he was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.  Id.  If the plaintiff meets that burden, the defendant must produce a legitimate, nondiscriminatory reason for its adverse employment action.  Id. Once the defendant has met this burden, the burden shifts back to the plaintiff who must "demonstrate that the proffered reason is a pretext for discrimination."  Id.  Unisoft argues that it is entitled to summary judgment because Carbaugh is unable to establish either a prima facie case of retaliation or that Unisoft's legitimate, nondiscriminatory reasons for is actions are pretexts for FLSA retaliation.

> (a) Prima Facie Case Not Established Because there is No Evidence Carbaugh Engaged in Protected Activity

Unisoft argues that Carbaugh did not engage in protected activity.  Unisoft explains that

> [t]here is no evidence that prior to his separation from [Unisoft], [Carbaugh] filed a complaint or instituted a proceeding under the FLSA, testified or was about to testify in any such proceeding, or served or was about to serve on an industry committee. . . Additionally . . . Plaintiff was an exempt employee at all times and therefore was not entitled to overtime under the FLSA. Accordingly, there is no evidence that Plaintiff engaged in the requisite protected activity.  As such he cannot establish a prima facie claim of FLSA retaliation.[64]

As evidence that he engaged in protected activity, Carbaugh cites his declaration testimony that in February of 2009 he told Adams

---

[64]Defendant's Motion for Summary Judgment, Docket Entry No. 39, p. 19.

and Taylor that he sometimes worked more than 40 hours per week, and they denied his request for compensatory time when he worked more than 40 hours in a week.

In order to make a viable claim for discrimination under the FLSA one must prove that he or she engaged in protected activity under 29 U.S.C. § 215(a)(3). Hagan, 529 F.3d at 624. In the Fifth Circuit "an informal, internal complaint" constitutes protected activity under § 215(a)(3). Id. at 625-26. "[H]owever, not all 'abstract grumblings' or vague expressions of discontent are actionable complaints." Id. In order to be considered protected activity an informal complaint must concern some violation of the law. Id. See also Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1334 (2011) (acknowledging that "the phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns"); Truex v. Hearts Communications, Inc., 96 F.Supp.2d 652, 666 (S.D. Tex. 2000) (Rosenthal, J.) (finding that an employee engaged in protected activity when he "complained about overtime pay to his supervisor on several occasions, specifically claiming at least twice that the [employer's] failure to pay him overtime was against the law"). Here, the complaint that Carbaugh made to Adams and Taylor in February of 2009 regarding overtime is not actionable because Carbaugh neither sought overtime pay nor

-56-

asserted a right to overtime pay.  Instead, Carbaugh simply told Adams and Taylor that he sometimes worked more than 40 hours per week, and he asked if he could receive compensatory time when he did.  Carbaugh's "complaint" did not concern a violation of the law, and did not provide Unisoft fair notice that he had "filed a complaint" under the FLSA.

(b)  No Evidence of Pretext

Even if Carbaugh had established a _prima facie_ case of FLSA retaliation, he has failed to present any evidence capable of raising a genuine issue of material fact for trial as to whether Unisoft's legitimate, nondiscriminatory reasons for discharging him are not the true reasons but, instead, are pretexts for FLSA retaliation.

The only evidence of pretext that Carbaugh offers is the close temporal proximity between his complaint to Adams and Taylor in February of 2009 about sometimes working more than 40 hours per week, and his discharge on May 1, 2009.  The Fifth Circuit has stated that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." _Swanson v. General Services Administration_, 110 F.3d 1180, 1188 & n.3 (5th Cir.), _cert. denied_, 118 S.Ct. (1997).  But the Fifth Circuit has consistently rejected mere temporal proximity as raising a fact issue on pretext.  _See Armstrong v. City of_

-57-

<u>Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1997); <u>Robertson v. Alltel</u> <u>Information Services</u>, 373 F.3d 647, 656 (5th Cir. 2004); <u>Strong</u>, 482 F.3d at 808 ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.").  As temporal proximity is the only evidence that Carbaugh cites in support of his contention that he was discharged in retaliation for having complained about working overtime, Carbaugh has failed to carry his burden of producing evidence capable of raising a genuine issue of material fact for trial on the issue of pretext.

## IV.  <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that Unisoft is entitled to summary judgment on all of Carbaugh's claims.  Accordingly, Defendant's Motion for Summary Judgment (Docket Entry No. 39) is **GRANTED.**

**SIGNED** at Houston, Texas, on this 15th day of November, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-58-